UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

---

| | |
|---|---|
| IN RE: ROGER WAYNE SIMKINS, | Case No. 05-36933 |
| Debtor, | Chapter 7 |
| and | |
| IN RE: CHRISTINA WOODWARD, | Case No. 04-33851 |
| Debtor. | Chapter 7 |

---

### ORDER DENYING TRUSTEE'S MOTIONS
### FOR ATTORNEY'S FEES

---

In these two cases, the Chapter 7 trustee sought information and documents from the debtors. The debtors did not provide the information and documents in a timely manner, and the trustee was forced to file motions for turnover. The motions had the desired effect, and by the time the issues came before the Court for hearing, the debtors had provided the documents. The trustee, however, sought attorney's fees in each case in the amount of $600 per case. The Court took the request for attorney's fees under advisement. Given the information recited in the trustee's motions, the Court denies the request for attorney's fees in both cases.

Facts

Both debtor Simkins and the Woodwards were represented by counsel.

*Simkins*

1

The trustee's turnover motion in the <u>Simkins</u> matter indicates that at the § 341 meeting of creditors, the debtor agreed to file amended schedules to correct some errors in his original schedules. Twice thereafter, the trustee demanded that the debtor file the amended documents. The debtor did not respond.

Nine months after making his second request, the trustee filed the instant turnover motion. In this motion, he asked the court to award him attorney's fees in the amount of $600 "due to the Debtor's failure to cooperate with the requests of the Trustee in a timely manner."

*Woodward*

In the Woodwards' case, the trustee determined from the schedules and the § 341 meeting that the estate might have an interest in the proceeds of a personal injury case and some garnished funds. The trustee demanded turnover of information relating to the personal injury suit and the garnished funds on three separate occasions–at the § 341 meeting, and by two letters. The debtors failed to respond to the demands.

Again, nine months after making the second letter demand, the trustee filed the instant turnover motion. As in the <u>Simkins</u> motion, the trustee asked the court to award him attorney's fees of $600 "due to the Debtor's lack of cooperation with the Trustee."

<u>The Trustee's Argument</u>

At the hearings on the motions for turnover, the trustee argued that there was precedent in the district for awarding attorney's fees in these sorts of situations. He told the Court that one of the other visiting judges to the Southern District of Illinois, Judge William V. Altenberger, had granted a motion for attorney's fees in a similar case. After the hearing, the trustee provided the Court with the following documents: the trustee's Verified Motion for Payment of Attorney's Fees in <u>Eggmann v. Fifth Third Bank</u>, docket number 05-3158; an order signed by Judge Altenberger on October 10, 2006 in <u>In re Able</u>, docket number 05-35758; and an order signed by Judge Altenberger on October 11, 2006 in <u>In re Sims</u>, docket number 05-36728.

The motion the trustee provided from the <u>Eggmann v. Fifth Third Bank</u> matter involved the following circumstances: The trustee demanded that the creditor bank provide, prior to the § 341 meeting, certain documents regarding its collateral. The creditor did not do so. The debtor appeared and testified at the § 341 meeting, and her testimony led the trustee to believe that further investigation was warranted on the relevant issue. After the meeting, the trustee sent the creditor bank a letter demanding the documentation. The bank did not respond. Some six months passed without the bank responding, and accordingly, the trustee filed an adversary complaint to avoid the bank's lien.

After the trustee filed the adversary complaint, an attorney representing the bank faxed the trustee a representation regarding the date when the bank

perfected its lien.  It appeared to the trustee, reviewing this representation, that the transaction might have involved a preferential transfer, and the trustee demanded that the bank send further information.  The bank did not do so.  Accordingly, the trustee filed an amended complaint.

Several weeks later, the bank filed its answer to the amended complaint, which referred to exhibits allegedly containing the information the trustee had been requesting.  The trustee corresponded with counsel for the bank, indicating that if the trustee could get the referenced exhibits, he'd consider dismissing the complaint upon payment of costs and attorney's fees.  The bank's counsel rejected the proposal.  The trustee then attempted to negotiate dismissal with the bank's counsel; again, the bank rejected the trustee's proposals.

At this point, the trustee filed in the adversary a motion for payment of attorney's fees.  In this motion, the trustee argued that the creditor had not acted in good faith, including the fact that the bank had "ignored a directive of the Court and a demand by the Trustee and to date has failed to provide an explanation as to why."  The trustee argued that the bank had "ignored the Trustee's demands, forced the Trustee to hire counsel, file two complaints, appear at a pre-trial conference and file research and prepare the present motion."  In support of his motion, the trustee cited cases holding that § 105 of the Bankruptcy Code gives a bankruptcy court the authority to award

attorney's fees and costs in appropriate circumstances (particularly <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991) and <u>In re Amnotiene</u>, 316 B.R. 25 (Bankr. E.D. N.Y. 2004)).

The documents which the trustee provided to the Court in this case do not include an order disposing of the motion in the <u>Eggmann v. Fifth Third Bank</u> matter, nor do they indicate which judge heard and ruled on the motion. The trustee, in his cover letter to the Court, indicated that the "motion was granted, but the case was settled before [Chief Judge Kenneth] Meyers actually entered an opinion on the motion."

The two Judge Altenberger orders the trustee submitted are virtually identical to each other. The <u>Sims</u> order reads as follows:

> This matter is before the Court on the Trustee's motion to compel debtor's 2005 tax returns and any tax refund received. On May 30, 2006, this Court held a hearing on the Trustee's motion to compel. At the hearing, the Trustee reported that he eventually received a copy of the tax returns, but that he would be taking no further action as to the refund. The Trustee made an oral motion for attorney fees in the amount of $230 for his work in preparing and appearing on the motion to compel.
>
> Therefore, IT IS ORDERED that the Trustee's motion to compel is DENIED as MOOT. The Trustee's oral motion for attorney fees is GRANTED. Debtor is ORDERED to pay the Trustee $230 within thirty days of the date of this order. Upon notification by the Trustee that the debtor has failed to timely comply, this Court may take further action it deems appropriate, which could include dismissal of the debtor's cause without further notice or hearing.

The <u>Able</u> order is different only in the specific items the debtor failed to produce.

<u>Analysis</u>

5

This Court does not disagree with the trustee's assertion in the <u>Eggmann v. Fifth Third Bank</u> pleading that bankruptcy courts may impose attorneys' fees as part of their 11 U.S.C. § 105 powers. There are numerous cases which support the trustee's contention. *See, e.g.*, <u>In re L.H. & A. Realty, Inc.</u>, 62 B.R. 910 (Bankr. D. Vermont 1986), <u>In re Kennedy</u>, 80 B.R. 673 (Bankr. D. Del. 1987), <u>In re Carrico</u>, 206 B.R. 842 (B.A.P. 6th Cir. 1997). But it is not clear to the Court what theory provides the basis for the trustee's request for attorney's fees in the two cases at bar, nor is it clear that the particular facts of these two cases justify the imposition of fees here.

As an initial matter, the trustee does not indicate whether he seeks fees to compensate him for his time, or simply as a punitive measure against these debtors for failing to comply with his lawful requests. The Court will assume, based on the language the trustee used in his motions, that he seeks sanctions against the debtors in the form of remuneration for the time the trustee expended in the matter. Such sanctions may be imposed in civil contempt actions. *See*, <u>Industrial Tool Distributors, Inc. v. Presidential Financial Corp., Inc.</u>, 55 B.R. 746, 751 (N.D. Ga. 1985) ("Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience of a court order; and (2) to compensate the complainant for losses resulting from the contemnor's noncompliance.")

There are several cases which indicate that, in order for a bankruptcy

6

court to impose contempt sanctions, the non-complying party must have violated a specific court order. In In re Hercules Enterprises, Inc., 387 F.3d 1024 (9th Cir. 2004), the Ninth Circuit stated,

> In order for the court to find [the debtor] in contempt, the bankruptcy court had to find that he violated a specific and definite order and that he had sufficient notice of its terms and the fact that he would be sanctioned if he did not comply. *See Knupfer v. Lindblade* (*In re Dyer*, 322 F.3d 1178, 1190-91 (9th Cir. 2003) ("The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.").

The District Court for the Southern District of Florida found the same in In re Shore, 193 B.R. 598, 601 (S.D. Fla. 1996) ("A party seeking a civil contempt order must prove by clear and convincing evidence that the respondent(s) violated a court order.") *See also*, In re Norris, 192 B.R. 863 (W.D. La. 1995), Metz v. Poughkeepsie Savings Bank, FSB, 231 B.R. 474 (E.D.N.Y. 1999), In re Babbidge, 175 B.R. 708 (Bankr. W.D. Mo. 1994).

In the current cases, the debtors did not violate any court orders. Rather, they failed to comply with requests the trustee made of them. Making such requests is, of course, an essential part of the trustee's job. If the bankruptcy system is to function smoothly and as intended, it is incumbent upon debtors to provide the trustee with the information the trustee needs to administer the proceedings, and to do so in a timely fashion. The fact that these debtors did not comply with the trustee's requests in a timely fashion is a matter of concern

to the Court. But that failure does not constitute failure to abide by a court order–the kind of action that gives rise to sanctions.

Further, there is no need in these cases to impose sanctions in order to coerce compliance with a court order. Again, there was no order of turnover issued in these cases. And by the time the motions for turnover reached the hearing stage, the debtors had complied. So imposition of sanctions under these circumstances would not coerce these debtors to turn over the materials the trustee had requested.

Finally, the motion the trustee provided in the <u>Eggmann v. Fifth Third</u> matter illustrates the fact that sanctions should be imposed in those cases in which behavior is egregious, and not as a routine matter of course. In the <u>Eggman v. Fifth Third</u> matter, it appears that a sophisticated institutional creditor–a bank–repeatedly ignored not only the trustee's request for information, but a court's turnover order. These actions not only cost the trustee substantial time and effort, but caused needless litigation in the form of not one, but two, adversary complaints. Such obstreperousness was beyond the pale, and the fact that Judge Meyers may have considered imposing sanctions before settlement confirms that fact.

In contrast, the cases here involve facts that are, sadly, not uncommon in many consumer cases. Trustees ask debtors to provide documentation. Debtors agree to do so. But then, because some debtors are not the best

record-keepers, or because they have trouble keeping track of what they are supposed to be doing, or because they have trouble obtaining certain records, they do not do what they say they are going to do. It is an unfortunate fact that debtors–even those debtors represented by counsel–often need several "nudges" to do what they need to do. Sometimes those "nudges" must come in the form of the threat of a court order. This should not be the case, but not infrequently, it is.

This Court does not feel comfortable sanctioning debtors under the circumstances outlined in the two motions involved here, in spite of the debtors' problematic failure to timely comply with the trustee's requests. If the Court were to impose sanctions in these two cases, it is difficult to imagine any turnover motion which would not give rise to a request for sanctions. And it would not be appropriate for the Court to impose sanctions in every case in which a trustee is forced to file a turnover motion–again, sanctions are extreme measures, to be imposed in the cases on the fringe.

For all of the above reasons, the Court hereby DENIES the trustee's requests for attorney's fees in the above-captioned matters.

ENTERED: March 28, 2007

                                                  /s/ Pamela Pepper
                                        UNITED STATES BANKRUPTCY JUDGE